**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Tywan G. Christopher,

Plaintiff,

v.

Dakota County; Sloane McPherson, Michel Franson, and Brady Ruark, Correctional Officers, in their individual and official capacities,

Defendants.

No. 22-cv-2267 (KMM/DLM)

**ORDER**

---

This matter is before the Court on the Report and Recommendation ("R&R") issued by United States Magistrate Judge Douglas L. Micko on December 9, 2024. R&R (Doc. 52). Judge Micko recommends that Defendants' Motion for Summary Judgment (Doc. 34) be granted in part and denied in part. Specifically, the R&R concludes that all claims against Defendants Sloane McPherson and Michel Franson should be dismissed with prejudice, and all claims against Defendants Brady Ruark and Dakota County should remain. R&R 23. Dakota County and Ruark filed a timely Objection to the R&R, Defs.' Obj. (Doc. 55), and Plaintiff Tywan Christopher filed a Response to the Objection, Pl.'s Resp. (Doc. 57). For the reasons discussed below, the Objection is overruled, the R&R is accepted, and Defendants' motion for summary judgment is granted in part and denied in part.

Mr. Christopher alleges that while he was a pretrial detainee in the Dakota County Jail, the individual Defendants violated his constitutional rights by failing to protect him

from a physical attack by another inmate, identified in the R&R as "D.M." Plaintiff also alleges that CO[1] Ruark is liable for the tort of negligence under state law and that Dakota County is vicariously liable as his employer.

During a church service in the jail gymnasium on March 19, 2019, D.M. threatened to harm Mr. Christopher, and a few days after these threats, D.M. assaulted and injured him. CO McPherson and CO Franson were in the gymnasium when D.M. threatened Mr. Christopher, and they responded to the incident by removing D.M. from the gymnasium. D.M. was placed on lockdown for 24 hours. However, Mr. Christopher claims that COs McPherson and Franson should have done more to protect him from the foreseeable future assault because they did not place Mr. Christopher in protective custody or enter a notification in the jail's computer system to keep him separate from D.M.

After the church-service incident, CO Ruark told Mr. Christopher that he was being transferred from the intake unit to the general population unit. Mr. Christopher was concerned that after the transfer he and D.M. could encounter one another. Mr. Christopher and CO Ruark provided different accounts of what happened next. According to Mr. Christopher, he communicated his concerns about being in the same area as D.M. to CO Ruark, and Ruark told him not to worry about where Ruark moved him. CO Ruark told Mr. Christopher "You move where I tell you to move." However, CO Ruark testified that Mr. Christopher did not say anything about being afraid to be in the same unit as D.M., and if he had, he would have asked Mr. Christopher if he wanted to be placed in protective

---

[1] All the individual Defendants are corrections officers at the Dakota County Jail. The Court refers to them by the title "CO."

custody. CO Ruark also testified that he had no prior knowledge of the church service altercation.

Ultimately, Mr. Christopher was transferred to the general population unit in the Jail. Shortly after the transfer, D.M. approached Mr. Christopher from behind and punched him in the back of his head. Mr. Christopher lost consciousness and fell to the ground, striking his face on the metal edge of a table and suffering significant bodily harm.

## I. Claims Against McPherson and Franson

In recommending that the claims against COs McPherson and Franson be dismissed with prejudice, Judge Micko found that Mr. Christopher had failed to point to evidence from which a reasonable jury could conclude that their conduct amounted to a constitutional violation. R&R 8–14. In part, Judge Micko concluded that even if CO McPherson heard D.M. tell Mr. Christopher that he would "whoop [Mr. Christopher's] ass," the fact that CO McPherson did not place a "keep separate" flag in the computer record did not amount to deliberate indifference. Mr. Christopher did not ask CO McPherson to place him in protective custody or keep him separate from D.M. after the March 31, 2019 altercation. R&R 11–13. In addition, Judge Micko found the evidence did not support a conclusion that CO Franson was responsible for entering a keep separate flag in the jail's computer system because he was not the primary officer to respond to the church-service incident. The R&R also concluded that Mr. Christopher presented no evidence that CO Franson heard D.M. threaten Mr. Christopher. R&R 13–14.

Mr. Christopher did not object to the R&R's conclusion that COs McPherson and Franson are entitled to summary judgment. Having reviewed the record and considered the

R&R, the Court finds the recommendation that summary judgment be granted in favor of CO McPherson and CO Franson is neither clearly erroneous nor contrary to law. *Nur v. Olmsted Cnty.*, 563 F. Supp. 3d 946, 949 (D. Minn. 2021) (discussing applicable standard of review of an R&R in the absence of objections; citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam)). Accordingly, the Court accepts the R&R in this respect and dismisses the claims against Defendants McPherson and Franson.

## II. Claims Against Dakota County and Ruark

The R&R determined that a reasonable jury could find CO Ruark was deliberately indifferent to a substantial risk to Mr. Christopher's safety and that Mr. Christopher's right to be protected from harm was clearly established when D.M. assaulted him. R&R 14–19. With respect to Mr. Christopher's supplemental state-law negligence claim, Judge Micko rejected Defendants' argument that CO Ruark was entitled to official immunity under Minnesota law for the same reasons that a reasonable jury could conclude that CO Ruark acted with deliberate indifference. R&R 19–23.

In his Objection to the R&R, CO Ruark argues that he is entitled to qualified immunity on Mr. Christopher's deliberate indifference claim for two reasons. First, he asserts that the evidence would not allow a reasonable jury to find that D.M. posed a substantial risk of serious harm to Mr. Christopher. Second, CO Ruark argues that the evidence does not show he was aware of facts that would support an inference that Mr. Christopher was in danger from D.M., and there is no evidence Ruark actually drew such an inference. Defs.' Obj. 2. Concerning Mr. Christopher's state-law negligence claim,

CO Ruark asserts that he is entitled to official immunity because Mr. Christopher failed to present any argument on the issue of willfulness, and even if he had made such an argument, there is no evidence that Ruark's conduct was willful. *Id.* at 2–3.

Because Ruark has filed specific objections to these aspects of the R&R, the Court reviews them de novo. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) (same); D. Minn. LR 72.2(b)(3) (same). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). As explained below, having conducted the required de novo review, the Court accepts the R&R and overrules CO Ruark's objections.

**A. Objectively Substantial Risk of Serious Harm**

CO Ruark objects to the R&R's conclusion that a reasonable jury could find, objectively, that D.M. posed a substantial risk of serious harm to Mr. Christopher. He argues that the evidence Mr. Crhistopher points to in support of this element of his deliberate-indifference claim is insufficient. The Court disagrees.

Officer Ruark's objection addresses the first element of Mr. Christopher's failure-to-protect claim under the Fourteenth Amendment.[2] "To establish prison officials failed to

[2] Because Mr. Christopher was a pretrial detainee when he alleges Defendants failed to protect him from the assault by D.M., his claim under 42 U.S.C. § 1983 "is not analyzed under the Eighth Amendment, but instead under the Fourteenth Amendment's Due Process Clause." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). However, the Eighth Circuit applies the same standards for a deliberate-indifference claim under the Eighth and Fourteenth Amendments. *Id.*

prevent harm, [Mr. Christopher] must prove he was 'incarcerated under conditions posing a substantial risk of serious harm.'" *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (same). "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." *Holden*, 663 F.3d at 341. "When considering [this element], the assailant's conduct can provide the court 'the most probative evidence of the degree and type of risk that [the plaintiff] faced.'" *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010) (quoting *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007)). In addition to the assailant's conduct, courts can also consider the assailant's "state of mind," whether the plaintiff "promptly reported a threat, asked to be moved immediately," and made additional requests if "no help was forthcoming. . . ." *Young*, 508 F.3d at 872. Conversely, "a plaintiff's failure to express fear or to accept an offer of protective custody [can be] some evidence that a substantial risk of serious harm did not exist." *Id.* (citing *Berry v. Sherman*, 365 F.3d 631, 634–35 (8th Cir. 2004)).

First, CO Ruark contends that D.M.'s threats at the church service to "whoop [Plaintiff's] fucking ass" and his promises that Mr. Christopher would be "dealt with" do not show a substantial risk of serious harm *inside the jail* because, as D.M. was escorted out of the gymnasium, he stated his intent to harm Plaintiff "in the streets." According to CO Ruark, this showed only a risk that Plaintiff would be harmed "outside of the confines of the jail, not within it." Objection at 7.

Defendants raised this same argument in their summary judgment briefing. Defs.' Summ. J. Mem. 17–18 (Doc. 36). Judge Micko rejected it in the R&R as follows:

> Although Defendants insist that the evidence shows that D.M. only posed a risk to Mr. Christopher outside the jail, D.M.'s deposition testimony about his own words, actions, and state of mind establishes that he posed a substantial risk of serious harm to Mr. Christopher inside the jail. Holding to the contrary would be simply to thin a reed, for it would insulate defendant jailers from liability—as a matter of law—where an assailant announces an intent to harm, follows through on it, but carries the plan out slightly differently than announced. Such a circumstance may convince a jury that jailers should not be liable, but that jury would not be unreasonable in concluding otherwise. The Court finds that a reasonable jury could conclude that D.M. posed a substantial risk of serious harm to Mr. Christopher inside the jail.

R&R 8. Considering the matter de novo, this Court reaches the same conclusion.

Next, CO Ruark asserts that the "hallmarks of obviousness [of a risk of harm] do not exist here" because the evidence does not show D.M. "was known to be a volatile, dangerous man" and "while [D.M.] previously threatened Plaintiff at a church service, the County abated any risk by placing [him] in lockdown for 24 hours." Objection at 6. In support of this argument, Ruark relies on *Vandevender v. Sass*, where the Eighth Circuit made the following observations:

> Most of our prior failure-to-protect cases arising out of an inmate-on-inmate assault have involved an attacker who was known to be a volatile, dangerous man, . . . or who previously threatened or fought with the victim, . . . or a victim who should have been better protected because of known prior inmate threats. . . . In these cases, because of the violate nature of the inmate assaults, the substantial risk of serious harm was obvious, and defendants' liability turned on the subjective issue of deliberate indifference (unless the victim had denied or not disclosed the prior threat or altercation to prison officials).

970 F.3d 972, 976 (8th Cir. 2020). However, the Court finds CO Ruark's reliance on *Vandevender* misplaced. *Vandevender* affirmed the dismissal of a plaintiff's complaint containing allegations showing only that the plaintiff "was the unfortunate victim of a surprise attack by a fellow inmate." 970 F.3d at 976. This case, by contrast, is not a "surprise attack" case. Indeed, the *Vandevender* court stressed that the amended complaint at issue was insufficient, in part, because it did not allege "that Vandevender had previously been threatened by [the assailant] or by any other . . . inmate. . . ." *Id.* Here, of course, CO Ruark cannot contend that there is no evidence that D.M. threatened Mr. Christopher prior to the assault.[3] It is undisputed that D.M. threatened to harm Mr. Christopher and stated that he would be "dealt with."

[3] Referencing *Vandevender*'s description of the nature of the risk at issue in most prior failure-to-protect cases, Officer Ruark asserts that "[a]bsent these hallmarks of an obviously substantial risk of serious harm to the inmate, Plaintiff must establish that he was detained under conditions posing a substantial risk of serious harm." Objection at 7. This is a somewhat puzzling articulation of the first element in a failure to protect claim. A plaintiff asserting a deliberate-indifference claim on a failure-to-protect theory is always required to show that he was confined under conditions posing a substantial risk of serious harm. The *Vandevender* court's summary of cases where "the substantial risk of harm was obvious" is simply a shorthand explanation for why the outcome in those cases did not turn on the first element of a failure-to-protect claim and instead "turned on the subjective issue of deliberate indifference." 970 F.3d at 976. The *Vandevender* court distinguished those cases from "surprise attack" cases where the circumstances presented no substantial risk of serious harm because the assault essentially occurred without warning. *Id.* (citing *Curry v. Crist*, 226 F.3d 974, 978–79 (8th Cir. 2000) and *Tucker v. Evans*, 276 F.3d 999 (8th Cir. 2002). Because *Vandevender* involved a surprise attack, the *Vandevender* court also considered whether its surprise attack precedents were controlling or whether Mr. Vandevender had adequately alleged circumstances showing an obvious and well-documented risk of harm so pervasive that a specific threat to the plaintiff was unnecessary to allow a factfinder to determine that a prison official was subjectively aware of the risk. *See id.* at 976–77. This case involves neither a surprise attack nor an attempt by Mr. Christopher to prove a substantial risk of serious harm by means of pervasive assaults generally; rather, this is a case of a specific threat to Mr. Christopher's safety made by another inmate prior to the assault that injured Mr. Christopher.

Finally, CO Ruark argues that the R&R improperly "placed emphasis on the fact that [D.M.] testified that he harbored an intention to harm Plaintiff after he heard that Plaintiff was talking poorly about him (but not before), . . . because the fact was a secret known only to [D.M.]" Objection at 7. Relying on *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996), CO Ruark insists that this evidence of D.M.'s state of mind cannot show a substantial risk of serious harm because none of the corrections officers knew about D.M.'s secretly held intent. *Id.* However, this argument conflates the objective and subjective prongs of the deliberate-indifference analysis. The question on the first element is not about what Defendants knew or didn't know, but whether there is evidence that would allow a jury to find that D.M. posed a substantial risk of serious harm to Mr. Christopher. Indeed, CO Ruark's reference to *Prater* confirms this. The *Prater* court "assume[d] without deciding that Prater's incarceration with [his assailant] resulted in a serious deprivation of protection, and thus Prater could establish the objective prong of the constitutional right." 89 F.3d at 541. Because of that, the *Prater* court went on to find that the plaintiff failed to establish the subjective prong of the claim because there were "no facts from which an inference could be made that the prison officials actually knew of the risk to Prater." *Id.* As noted above, an assailant's state of mind can be relevant evidence to consider in determining whether a plaintiff has established the objective element of a failure-to-protect claim, *Young*, 508 F.3d at 872, and it was not improper for the R&R to rely on evidence of D.M.'s state of mind in evaluating this issue.

Accordingly, the Court agrees with the R&R that when the evidence is viewed in the light most favorable to Mr. Christopher, a reasonable jury could conclude that D.M. posed a substantial risk of serious harm to him.

**B. Ruark's Awareness of a Risk of Harm**

CO Ruark next objects to the R&R's conclusion that Mr. Christopher presented evidence that would allow a jury to find in his favor on the subjective element of his deliberate indifference claim. Objection at 8–12; Defs.' Summ. J. Mem. at 23–26; Defs.' Summ. J. Reply 6–7. However, the Court agrees with the R&R that there are genuine factual disputes on these issues that must be resolved by a jury.

First, CO Ruark argues that there is no evidence he was aware of any facts from which the inference could be drawn that D.M. posed a threat of serious harm to Mr. Christopher. He contends that even crediting Mr. Christopher's testimony that he made a report about his safety concerns, the nature of the report was too vague. Specifically, Plaintiff's testimony does not mention that D.M. was the person he feared. Objection at 10 ("Plaintiff's alleged report made no mention of [D.M.] as the person whom Plaintiff feared."). Therefore, CO Ruark contends Plaintiff's report could show "nothing more than an expression of generalized fear." *Id.* (citing *Jones v. Wallace*, 641 Fed. App'x 665, 666 (8th Cir. 2016)). But the evidence shows Mr. Christopher reported more than a generalized concern for his safety, and Plaintiff's deposition testimony indicates that his report was, in fact, about D.M. For example, his deposition involved the following discussion:

> Q Did you report this incident, the alter – the comments that he was making toward you during the church service, did you report it?

….

A Yeah. Once I, once I – they were reclassifying me, I specifically had let the guards know that there was an incident between me and this fellow and I didn't feel, I didn't feel safe and I didn't feel comfortable with being around this individual, and I wanted to make sure that they weren't putting us in the same vicinity of each other.
Q Let's talk about that. Who did you tell?
A I told the guard that was in charge of moving me to a different portion of the jail.

….

Q Following the church incident, did you make any comments about [D.M.] to or about him?
A Yeah, to the guard. I was letting him know about the previous incident that happened and how I felt about my life and how I wanted to make sure that we weren't going to cme in contact with each other because of what the threats that were made before in the gym.

(Doc. 47-1 at 4, 5.) Contrary to CO Ruark's argument, this testimony specifically indicates that Plaintiff communicated his concern about D.M. following through on the threats he made during the church-service incident in the Jail's gymnasium.

Again relying on the Eighth Circuit's decision in *Prater*, CO Ruark next argues that Plaintiff's report did not put him on sufficient notice. CO Ruark argues that *Prater* "is illustrative of the detailed notice that an inmate needs to give to put an official on notice." Objection at 10–11. However, the *Prater* court reversed a decision denying the defendant officials' motion to dismiss not because Mr. Prater's report of safety concerns lacked sufficient detail, but because the allegations in the complaint about Mr. Prater's report

showed no basis to infer that the defendants were subjectively aware of a substantial risk of harm.

> [Aside from allegations that Prater was threatened by Penn,] [i]n all other respects, the pleadings reflect the absence of a reason for alarm on the part of the officials. Prater's complaint admits that the prison officials had assurances from both inmates that there would be no trouble. Furthermore, Prater does not dispute the fact that, despite the threats, he and Penn were incarcerated together for a substantial period of time without incident. Under the circumstances, the two-week period between Prater's return to OCC and the altercation was in itself a sufficient time for prison officials to believe that Prater was not, in fact, in danger. Thus, Prater's own version of the prison officials' conduct does not establish the level of subjective knowledge required for a violation of Prater's clearly established Eighth Amendment rights.

89 F.3d at 541–42. Here, CO Ruark does not point to testimony from Mr. Christopher or D.M. indicating that they told Defendants there would be no further trouble. This is not a case where Plaintiff and D.M. had been reintroduced to one another for several weeks before the assault occurred—indeed, the assault occurred right after the transfer, almost at the earliest opportunity. Moreover, as explained in the R&R, the *Prater* court concluded that "jail officials were not deliberately indifferent because they were not indifferent at all—they investigated the threats." R&R at 17–18. When the evidence is viewed in the light most favorable to Mr. Christopher, a reasonable jury could find that CO Ruark did not conduct any investigation in response to Plaintiff's report.

Next, CO Ruark argues there is no evidence that Mr. Christopher made any report of his concerns to Ruark at all, and even if he could show that he made a report to Ruark, there is no evidence that Ruark "actually drew [the] inference" that D.M. presented a threat

to Plaintiff's safety. Objection at 11–12. The Court disagrees. It is true that Mr. Christopher's deposition testimony indicates that he reported his concerns for his safety to "the guards" and does not mention Ruark by name as the guard to whom he made the report. But Plaintiff's deposition testimony included a physical description of the guard to whom he made the report, and he identified that guard as the same one who made the decision to transfer him. That is a sufficient basis to allow a jury to resolve the factual dispute about whether Mr. Christopher made the report to CO Ruark or not.

Moreover, accepting CO Ruark's position would require the Court to overlook or disbelieve Plaintiff's testimony that Ruark responded to the report by telling Plaintiff "don't worry about where I move you, you move where I tell you to move, have a seat." (Doc. 47-1 at 4.) Of course, the Court cannot disregard or disbelieve this evidence. Taking the reasonable inferences from this testimony in Plaintiff's favor—as one must at this stage—a jury could conclude: (1) that Plaintiff reported his concerns for his safety directly to CO Ruark; and (2) having been made aware of Plaintiff's safety concerns, Ruark disregarded Plaintiff's report out of hand. This is precisely what the R&R concluded. R&R at 18 ("[V]iewing the evidence in the light most favorable to Mr. Christopher, Defendant Ruark here did no . . . investigation, but rather shut down the dialogue by telling Mr. Christopher not to 'worry' about it; that Defendant Ruark was in charge; and that Mr. Christopher's job was to go where instructed."). CO Ruark denies this version of events, but it is not the Court's job on summary judgment to make credibility determinations. Whose version is more believable is for a jury to decide.

For these reasons, the Court concludes that CO Ruark is not entitled to summary judgment on Mr. Christopher's Fourteenth Amendment deliberate-indifference claim.

**C. Official Immunity**

CO Ruark next objects to the R&R's determination that he is not entitled to official immunity from liability on Mr. Christopher's state-law negligence claim. CO Ruark raises three arguments concerning the application of official immunity, and the Court addresses each below.

***Party Presentation Rule***

First, Officer Ruark argues that because Mr. Christopher never argued that Ruark's conduct was willful and malicious, "the Report and Recommendation could not address" that issue. He argues that the R&R's conclusion that a jury could find Ruark's conduct was willful and malicious, therefore, violates the "party presentation rule." Defs.' Obj. 13. The Court disagrees.

Under Minnesota law, whether a public official is entitled to official immunity from tort claims often depends on whether the official's conduct involved a ministerial duty or was discretionary. *See, e.g.*, *Misckovich v. Indep. Sch. Dist. 318*, 226 F. Supp. 2d 990, 1020 (D. Minn. 2002) (describing the test for determining whether an act is ministerial or discretionary). "[M]inisterial decisions are not protected by official immunity," and the immunity available for discretionary acts "can . . . be eviscerated when the plaintiff alleges, and proves, that the official acted willfully and maliciously." *Id.* at 1021. As recognized in the R&R, it is true that Plaintiff's opposition to Defendants' motion for summary judgment attempted to rebut the official-immunity argument by arguing that CO Ruark had a

ministerial duty under the circumstances to keep Mr. Christopher separate from D.M. and to place Mr. Christopher in protective custody. Plaintiff did not respond directly to Defendants' argument that even if CO Ruark's actions were discretionary, the evidence did not support a finding of willfulness. ECF 46 at 22–23.

The "party presentation principle" is the "policy supporting waiver and forfeiture." *Mirtech, Inc. v. Agrofresh, Inc.*, C.A. No. 20-1170-RGA, 2023 WL 3996618, at *4 n.3 (D. Del. June 14, 2023) (quoting *United States v. Dowdell*, 70 F.4th 134, 140–41 (3rd Cir. 2023)). Waiver is the intentional relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). "Forfeiture occurs when a party has an argument available but fails to assert it in time." *United States v. Nunez-Hernandez*, 43 F.4th 857, 859 (8th Cir. 2022). The distinction matters, particularly in the context of an appeal, where "[w]aiver precludes appellate review, [and] forfeiture limits consideration to a rigorous plain-error standard." *United States v. Chavarria-Ortiz*, 828 F.3d 668, 671 (8th Cir. 2016).

Defendants assert that the "party presentation rule" precluded Judge Micko from considering the issue of willfulness because Plaintiff conceded the issue. Objection at 13 ("Plaintiff essentially stipulated and agreed that Ruark's conduct was not willful and malicious so the Court should not be able to find otherwise."). Defendants are really asserting that Plaintiff waived the issue, but Defendants point to no stipulation, agreement, or express statement by Plaintiff conceding this issue. And here, although Plaintiff did not present an argument concerning willfulness in the portion of his opposition brief concerning official immunity, the Court finds no compelling reason to determine the issue has been forfeited. Plaintiff's briefing on the deliberate-indifference claim makes clear

Plaintiff's position that CO Ruark acted with the requisite intentional disregard of Plaintiff's safety to support a finding of willfulness. Accordingly, the Court finds that even if Plaintiff failed to specifically brief the issue of willfulness in the section of his opposition addressing Defendants' official immunity argument, that failure does not amount to forfeiture under the circumstances. This objection is, therefore, overruled.

***Evidence of Intentional Conduct and Vicarious Official Immunity***

Finally, the Court turns to Defendants' alternative official immunity arguments. CO Ruark argues that he was entitled to official immunity because "there is no evidence that Ruark intentionally committed an act that he had reason to believe was prohibited." Defs.' Obj. 13. And Defendants argue that because Officer Ruark is entitled to official immunity, Dakota County is entitled to vicarious official immunity on Mr. Christopher's state-law negligence claim. Defs.' Obj. 14–15. The Court has carefully reviewed the record on these issues and it agrees with the R&R that a jury should determine whether CO Ruark is entitled to official immunity and that Dakota County is not entitled to summary judgment on vicarious official immunity.

**ORDER**

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1. The Report and Recommendation (Doc. 52) is **ACCEPTED**.

2. Defendants' Objection (Doc. 55) is **OVERRULED**.

3. Defendant's Motion for Summary Judgment (Doc. 34) is **GRANTED IN PART** and **DENIED IN PART**.

    a. All claims against Defendants Sloane McPherson and Michel Franson are **DISMISSED WITH PREJUDICE**.

b. All claims against Defendants Dakota County and Brady Ruark **REMAIN**.

4. The parties shall contact the chambers of United States Magistrate Judge Douglas L. Micko to schedule a final settlement conference to take place before trial.

Date: February 25, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge